IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PABLO L. MATÍAS MORALES, | |
| Plaintiff, | |
| v. | CIVIL NO.: 13-1904 (MEL) |
| VENEGAS CONSTRUCTION CORP., | |
| Defendant. | |

## AMENDED OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On December 11, 2013 Pablo L. Matías Morales ("plaintiff") filed a complaint against Venegas Construction Corporation ("defendant"), alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), P.R. Laws Ann. tit. 29, § 146 ("Law 100"), and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802") and unlawful discharge in violation of P.R. Laws Ann. tit. 29, § 185(a) ("Law 80"). ECF No. 1. Pending before the court is defendant's motion for summary judgment and plaintiff's response in opposition. ECF Nos. 21; 22. For the reasons that follow defendant's motion for summary judgment is granted in part and denied in part.

### II.   SUMMARY OF UNCONTESTED FACTS[1]

Plaintiff began working for defendant in August of 1965, when he was hired as a Heavy Equipment Operator.[2] ECF No. 21-1, ¶ 4; 22-1, at 1, ¶ 4. Over the course of his employment

---

[1] Defendant did not submit a response to plaintiff's proposed uncontested facts (ECF No. 22-1, at 7-14). Thus, in accordance with Local Rule 56(e), plaintiff's proposed facts that are supported by specific citations to the summary judgment record have been deemed admitted due to defendant's failure to controvert them. D.P.R. Civ. R. 56(e).

[2] Although it is uncontested that plaintiff began working for defendant in August 1965, defendant adds that plaintiff also worked for Sanson Corp., on one or more occasions at some point(s) in time between 1965 and the year in which plaintiff alleges that defendant terminated his employment—that is, 2012. ECF No. 21-1, ¶ 4. It is

with defendant plaintiff operated numerous types of heavy equipment machines and vehicles. ECF No. 22-1, at 7, ¶ 1. Generally, when one piece of heavy equipment broke down the vehicle's operator could be transferred to operate another machine, if work were available. Id.

In June or July 2012, plaintiff was assigned to work on a construction project that involved demolishing a hotel at Cayo Largo, in Fajardo, Puerto Rico. ECF Nos. 1, ¶ 9; 5, ¶ 9; 22-1, at 7, ¶ 2. In this role plaintiff worked under the supervision of Eng. Luis Feliciano Medina ("Feliciano"). ECF Nos. 21-1, ¶ 7; 22-1, at 2, ¶ 7. Defendant was the subcontractor for the Cayo Largo project and was required by the contractor, a demolition company known as R4 Company, to supply the heavy machinery and employees to accomplish the project. ECF Nos. 21-1. ¶ 5-6; 22-1, at 1-2 ¶ 5-6. All of the equipment at the Cayo Largo worksite "suffered problems" and required maintenance. ECF Nos. 22-1, at 9, ¶ 5. Plaintiff was routinely assigned to the Caterpillar model 235 excavator machine (the "CAT 235") to perform demolition; the CAT 235 was known as "the Matías machine." ECF Nos. 21-1. ¶ 5-6; 22-1, at 1-2, ¶ 5-6. Id.

In early September 2012, while plaintiff was performing demolition work with the CAT 235 excavator for the Cayo Largo project, the excavator broke down when a rod got caught underneath the excavator and damaged the excavator's "starter" and "temperature cable." Id. ¶ 3; ECF No. 25-1, at 10: 10-15. After a new starter was purchased and installed, plaintiff was ordered to continue performing demolition with the CAT 235. ECF No. 22-1, ¶ 5. On September 17, 2012, the radiator in the CAT 235 clogged and the excavator overheated, requiring repairs. Id.

---

defendant's position that plaintiff has worked for it "continuously" since 2000, which it supports with a statement plaintiff made during his deposition to that effect. ECF No. 21-4, at 8: 8-24. Plaintiff responds that he did not work for Sanson Corp., but rather "worked sporadically with Sanson Corp. as instructed by his employer Venegas Construction Corp. who would deliver him . . . to the Sanson facility." ECF No. 22-1, at 1, ¶ 4. In his deposition, plaintiff indicated that he was doubtful that Sanson Corp. paid his salary, because "they never told [him] that [he] worked directly . . . [w]ith Sanson." ECF No. 25-1, at 2: 4-9; 4: 25-28. Ultimately, whether plaintiff worked with or for Sanson Corp. at any time between 1965 and 2012 has no bearing on the disposition of the pending motion for summary judgment.

On September 19, 2012, the date of plaintiff's 73rd birthday, plaintiff was assigned to operate another excavator with a hammer installed on its arm in order to demolish a beam that was approximately 40 to 50 feet high. ECF Nos. 1, ¶ 14; 5, ¶ 14; 21-1, ¶ 11; 22-1, at 4 ¶ 11, at 10 ¶ 6. Plaintiff wanted to demolish one of the sides before pushing the beam to fall over, and he told Feliciano that hitting the beam in its center could cause the beam to fall on plaintiff and / or to break the hammer. ECF No. 22-1, at 10 ¶ 6. Feliciano ordered plaintiff to hit the center and plaintiff obeyed him. Id. While plaintiff was demolishing the beam, the hammer strut of the excavator broke. ECF Nos. 21-1, ¶ 9; 22-1, at 3 ¶ 9. Feliciano became aggravated and instructed plaintiff to leave the Cayo Largo worksite "in the convoy."  ECF Nos. 21-1, ¶ 9; 22-1, at 3, ¶ 9, at 10 ¶ 7. Plaintiff left the worksite. ECF No. 22-1, at 10, ¶ 7.

At the time of plaintiff's departure from the Cayo Largo worksite there were three other excavators and a CAT roller at the site. ECF Nos. 1, ¶ 18; 5, ¶ 18. After the September 19, 2012 incident, plaintiff visited defendant's President, Emilio Venegas, who informed plaintiff that it would take about two weeks to have the machine repaired and advised plaintiff to collect unemployment benefits for those two weeks. ECF No. 22-1, ¶ 14. On September 22, 2012, Feliciano called plaintiff to offer him work at the Cayo Largo worksite, which plaintiff accepted, returning to the Cayo Largo worksite on September 24, 2012.[3] ECF No. 21-1, ¶ 12; 22-1, ¶ 12. On September 25, 2012, "a pin of the bucket of the excavator" that plaintiff was operating broke and plaintiff had to leave the Cayo Largo worksite once again. ECF No. 21-1, ¶ 13; 22-1, at 4 ¶ 13, 13 ¶ 12. On March 22, 2013, Emilio Venegas sent plaintiff a letter

---

[3] Defendant argues that the fact that Feliciano called plaintiff back to work at the Cayo Largo worksite on September 22, 2012 defeats plaintiff's theory that he was discharged from his employment with defendant on September 19, 2012. ECF No. 21-2, at 7. Plaintiff responds that after September 19, 2012 he was employed directly by the general contractor for the Cayo Largo project, R4 Company. ECF Nos. 21-4, at 47. Plaintiff testified in his deposition that R4 Company paid him cash for his work after the September 19, 2012 incident. ECF Nos.: 6-12; 22-1, ¶ 12. Plaintiff also cites to a portion of Feliciano's deposition, in which Feliciano indicated that "the general contractor" gave him instructions to call plaintiff. ECF Nos. 21-5, at 18: 13-19; 22-1, ¶ 12.

requesting that he report to work at the Rafael Hernández Colón Library project on March 25, 2013. ECF Nos. 22-1, ¶ 9. Plaintiff did not report to work at the Rafael Hernández Colón Library project. ECF Nos. 21-1, ¶ 18; 22-1, at 6, ¶ 18. Plaintiff did not work between the September 25, 2012 incident and defendant's March 2013 request for him to report to the Rafael Hernández Colón Library project. ECF No. 21-1, ¶ 20; 22-1, ¶ 20.[4] Defendant performed work at the Cayo Largo worksite until June 2013. ECF No. 22-1, at 10 ¶ 12.

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir.

---

[4] Plaintiff asserts that he regularly visited defendant looking for work after the incident (ECF No. 22-1, ¶ 20) and defendant claims that there was no other project at that time involving the use of excavators (ECF 21-1, ¶ 20).

1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

IV.   **ANALYSIS**

**A. The ADEA**

The Age Discrimination in Employment Act (the "ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). In an ADEA discrimination case, the plaintiff

bears the burden of proving "that age was 'the reason' that the employer decided to act." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 168 (2009) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). The ADEA does not authorize a plaintiff to bring mixed-motive age discrimination cases in which age is only a "motivating factor" in the employer's decision; it requires a plaintiff "to prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[5] Id. at 177-78 (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-44 (2000)). "Direct evidence is evidence which, in and of itself, shows discriminatory animus." Jackson v. Harvard University, 900 F.2d 464, 467 (1st Cir. 1990); Mandavilli v. Maldonado, 38 F.Supp.2d 180, 192 (D.P.R. 1999). When a plaintiff provides direct evidence that the employer discriminated on the basis of age, "the issue may be put to a finder of fact without further ado."[6] Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 24 (1st Cir. 1998).

---

[5] Defendant cites Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), which involves the standard for a hostile work environment or harassment claim under the ADEA, for the proposition that "[a] simple act of harassment is insufficient for legal action." ECF No. 21-2, at 8 (emphasis omitted). Defendant also includes citations to numerous other hostile work environment cases throughout its memorandum. See ECF No. 21-2, at 8-13. Plaintiff responds that he has not brought a hostile work environment claim in this case, stating "[d]efendant's barrage of hostile work environment case law deserves no attention as there is no harassment claim in the present case." ECF No. 22, at 2 n.2. Indeed, a review of the complaint reveals that plaintiff has not alleged that he experienced harassment or a hostile work environment. ECF No. 1. His cause of action for age discrimination is limited to a claim that he suffered a discrete instance of disparate treatment—that his employment with defendant was terminated in September 2012. Id. at 7-8.
[6] When a plaintiff lacks direct evidence showing discriminatory animus, "[h]e must . . . rely on the burden-shifting framework characteristic of cases involving circumstantial proof of discrimination." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 6 (1st Cir. 1990) (citations omitted); Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998) ("Absent direct evidence of discriminatory intent, an ADEA plaintiff may present circumstantial evidence pursuant to the familiar three-stage, burden shifting paradigm.") (citation omitted). Under the McDonnell-Douglas burden-shifting framework, a plaintiff must establish that (1) he or she is within the ADEA's protected age ground--over forty years of age; (2) his or her job performance met the employer's legitimate performance expectations; (3) he or she suffered an adverse employment action; and (4) defendant "did not treat age neutrally or retained younger persons in the same position." See Pages-Cahue v. Iberia Lineas Aereas de España, 82 F.3d 533, 536 (1st Cir. 1996) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1995)); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993)). The prima facie case shifts the burden of production to the employer, who must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1993). Plaintiff then has the opportunity to show that the employer's reason is a pretext for discrimination, allowing the factfinder to infer "discriminatory animus." See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 448 (1st Cir. 2009); González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

Then, in order to defeat the claim, the employer "must . . . either deny the validity or the sufficiency of the plaintiff's evidence, and [have] the jury . . . decide[] whether the plaintiff has proved discrimination by a preponderance of the evidence, or prove that it would have made the same decision even if it had not taken the protected characteristic into account, or both, if it chooses." Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000) (citations and internal quotation marks omitted).

Plaintiff's theory in this case is that he was terminated on September 19, 2012, when Feliciano sent him home from the Cayo Lago worksite and that defendant did not reemploy him until defendant requested that he report to work at the Rafael Hernández Colón Library project March 22, 2013. ECF Nos. 1, at 7-8; 22-1, at 4, ¶ 12. In support of this claim plaintiff has adduced direct evidence that defendant discriminated against him with respect to the terms and conditions of his employment on the basis on his age on September 19, 2012. In his deposition, plaintiff explained that when the hammer strut of the excavator that he was operating on September 19, 2012 broke, Feliciano said to him: "Get out of there, 'cause you're too old and you're no use anymore," "Go off and live on Social Security," "Here comes, here comes the convoy . . . and you're going in the convoy . . . [because] I don't want you here anymore." ECF No. 21-4, at 46: 25-27; 47: 1-7. In his deposition plaintiff also recalled that he said to Feliciano "but I've used a hammer before," to which Feliciano replied: "No, no, no, I don't want you here, you're too old, you don't know how to work anymore and you're out of here now." Id. at 47: 18-21. While "stray workplace remarks" are normally insufficient to establish the requisite discriminatory animus (see, e.g., Gonzales v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002)), Feliciano's comments regarding plaintiff's age were not made in passing or out of context, but at the time of the purported adverse employment action. Furthermore, the comments directly

relate to the decision to send him home on September 19, 2012 and not only refer to plaintiff's age, but reflect that his age was the reason Feliciano sent him home from the Cayo Largo worksite that day.

It is defendant's position that it "never fired plaintiff" and that the fact that Feliciano called plaintiff on September 22, 2012 requesting that he report to work at the Cayo Largo worksite on September 25, 2012 "defeats [p]laintiff's theory that he was discharged" on September 19, 2012.[7] See ECF Nos. 21-1, ¶ 16; 21-2, at 7. While this argument initially appears compelling, plaintiff counters that the general contractor, R4 Company, instructed Feliciano to call him on September 22, 2012 and that plaintiff returned to the Cayo Largo worksite to work directly for the contractor, R4 Company, which is owned by Melvin González—not to work for defendant, the subcontractor. ECF Nos. 22, at 6; 22-1, ¶ 12. Plaintiff cites to his deposition, which states:

> Q: Uh, Don Pablo, when you worked again in the, in the Cayo Largo project after, after the incident with Mr. Feliciano, did you work with Venegas again that week that you worked, or were you working for that company of Melvin's?
>
> A: Melvin's.
>
> Q: In order words, the one that paid you was Melvin's Company?
>
> A: Melvin paid me 'cash.'

ECF No. 21-4, at 47: 6-12. Taking plaintiff's assertion that after September 19, 2012 he worked directly for R4 Company at the Cayo Largo worksite as true, a reasonable jury could find that

---

[7] Suspensions, like terminations, are actionable under the ADEA. See, e.g., Reyes Díaz v. Cojimar, LLC, Civ. No. 12-1711(GAG), 2014 WL 916643, at *6 (D.P.R. March 10, 2014) (noting that suspension constitutes an adverse employment action for ADEA purposes). Plaintiff has brought a letter to the court's attention dated February 25, 2013, from Emilio Venegas to counsel Alfredo Acevedo Cruz, which states: "[T]he case of fellow Pablo Martinez Matias, we have never referred to it as a termination, because it is a temporary suspension." ECF No. 25-3, at 1.In the complaint, however, plaintiff does not allege that he was suspended in either the "facts common to all causes of action" section or in his causes of action pursuant to the ADEA or Law 100, averring throughout those sections that defendant terminated him. See ECF No. 1, at 2-9.

plaintiff's experienced an adverse employment action when he was sent home from work on September 19, 2012, despite the fact that it was Feliciano who called plaintiff on September 22, 2012 to ask him to return to Cayo Largo.

Defendant also posits: that Feliciano's statements "were directed to admonish [plaintiff] and [to] warn him due to his reckless use of heavy equipment;" that Feliciano "was upset for legitimate reasons;" that Feliciano did not make any comment to plaintiff "on account of or based on his age;" and that the reason for any adverse employment action plaintiff experienced was that plaintiff exhibited "extreme negligence" on three occasions between September 17, 2012 and September 25, 2012. ECF No. 21-2, at 7. Whether Feliciano actually made the statements listed above regarding plaintiff's age, whether Feliciano's comments were merely meant as an admonishment and warning, and whether Feliciano "was upset for legitimate reasons" are matters for the jury to decide. Defendant notes that plaintiff was subject to a prior warning related to the use of its equipment, citing to a memorandum dated September 12, 2011 and signed on September 15, 2011. ECF Nos. 21-1, at ¶ 15; 21-9. The memorandum is addressed to plaintiff, from Project Manager Heriberto Maya, and states:

> After having fully reviewed the causes of the rupture of the pipe . . . we find that there was negligence on your part in the performance of your work. It is apparent from the individuals interviewed, including experienced operators and yourself, that there was no way that a responsible operator would not notice the major blow to the pipe.

ECF No. 21-9, at 1. The memorandum also warns plaintiff that "a similar situation **must not** happen again." Id. (emphasis in original). The fact the plaintiff received a warning regarding his use of defendant's equipment in 2011, however, does not establish that he was negligent in operating heavy equipment on September 17, 2012, September 19, 2012, or September 25, 2012, let alone that defendant altered the terms of plaintiff's employment due to his negligence

on those occasions. While the record does reflect that plaintiff experienced problems with the equipment he was operating on September 17, 2012, September 19, 2012, and September 25, 2012, viewing the record in the light most favorable to plaintiff a reasonable jury could find that these problems were not the fault of plaintiff as the equipment operator. It is uncontested that all of the equipment at the Cayo Largo worksite experienced problems and required maintenance. Moreover, with respect to the September 17, 2012 breakdown of the CAT 235 plaintiff has cited to evidence that indicates Feliciano was aware of ongoing problems with the machine, but directed plaintiff to continue with the project, stating "[n]o, no, we can't stop the machine." ECF No. 25-1, at 7: 20-27. Similarly, with regard to the September 19, 2012 incident the summary judgment record contains evidence that the resultant equipment failure was the result of plaintiff's adherence to Feliciano's direction as his supervisor. Plaintiff stated in his deposition that he warned Feliciano that hitting the beam in its center could cause the hammer to break, that Feliciano ordered plaintiff to hit the center, and that plaintiff obeyed him. ECF No. 22-1, at 10, ¶ 6. As to the incident on September 25, 2012, in light of the fact that it occurred after Feliciano sent plaintiff home on September 19, 2012, whether or not plaintiff was negligent that day has no bearing on whether he was in fact discharged on September 19, 2012. While defendant may argue to the jury that any adverse employment action plaintiff experienced was the result of his "negligent" job performance, such an argument is insufficient to warrant summary judgment in its favor in light of plaintiff's direct evidence of age discrimination.

Next, defendant points out: that it has other employees who are over 60 years of age; that subsequent to the September 19, 2012 incident Feliciano did not make reference to plaintiff's age and treated plaintiff in a "good and respectable manner"; and that plaintiff and

Feliciano were "good friends." ECF No. 21-2, at 6-7. Accepting these assertions as true, however, would not preclude a reasonable jury from finding in favor of plaintiff with regard to his age discrimination claim. "The ultimate question on summary judgment in this ADEA case is 'whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he [experienced an adverse employment action] because of his age.'" Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 452 (1st Cir. 2009) (citing Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007)). The evidence to which plaintiff has brought to the court's attention with specific citations to the record satisfies this standard. Therefore, defendant's motion for summary judgment must be denied as to plaintiff's ADEA cause of action.

### B.  Law 100

Law 100, Puerto Rico's general employment discrimination statute, prohibits discrimination in employment by reason of "age, race, color, sex, social or national origin or social condition, political affiliation, political or religious ideology, or for being a victim or perceived as a victim of domestic violence, sexual aggression or stalking." P.R. Laws Ann. tit. 29, § 146. "The analysis under the ADEA and Law 100 is practically the same;" however, Law 100 requires a plaintiff to prove that age was a motivating factor in the challenged employment decision, not a "but-for" cause. Palacios v. First Bank Puerto Rico, CIV. 11-1420 GAG, 2012 WL 3837443, at *9 (D.P.R. Sept. 4, 2012) (citing Mojica v. El Conquistador Resort and Golden Door Spa, 714 F.Supp.2d 241, 262 (D.P.R. 2010)); see also Dávila v. Corp. De Puerto Rico Para Law Difusion Pública, 498 F.3d 9, 18 (1st Cir. 2007) and Ramos et al. v. Davis & Geck, Inc., 167 F.3d 727, 734 (D.P.R. 1999). Additionally, "[u]nder the ADEA, the burden of proof is at all times on the plaintiff," while under Law 100 "once the employee triggers [its] protections

. . . the burdens of both production and persuasion shift to the employer."[8] <u>Ramos</u>, 167 F.3d at 734 (citing <u>Wildman v. Lerner Stores Corp.</u>, 771 F.2d 605, 609 (1st Cir. 1985)).

To the extent that the burdens of proof under the statutes differ, "Law 100 offers a 'significantly more favorable' standard to plaintiffs than does the ADEA." <u>Baralt v. Nationwide Mut. Ins. Co.</u>, 251 F.3d 10, 16 (1st Cir. 2001) (citing <u>Cardona Jiménez v. Bancomercio de Puerto Rico</u>, 174 F.3d 36, 42 (1st Cir. 1999)). In light of the more plaintiff-friendly burden of proof under Law 100, plaintiffs' evidence of age discrimination discussed in reference to his ADEA claim is also sufficient to create a jury issue as to whether age was a motivating factor in defendant's decision to terminate him, in violation of Law 100. Thus, defendant's motion for summary judgment is denied as to plaintiff's Law 100 cause of action.

### C.  Article 1802

Article 1802 provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. A plaintiff may not bring claims under Articles 1802 and 1803 based on the same allegations which underlie an age discrimination claim pursuant to Law 100. <u>Zayas-Ortiz v. Becton Dickinson Caribe, Ltd.</u>, 878 F.Supp.2d 351, 356 (D.P.R. 2012) (dismissing Article 1802 claims based on the same facts that gave rise to Law 100 claims); <u>Medina v. Adecco</u>, 561 F.Supp.2d 162, 176 (D.P.R. 2008) (same). A review of the complaint does not reveal allegations of any tortious conduct that are distinct and independent from those which are related to plaintiff's age discrimination claim. <u>See</u> ECF No. 1. In short, the allegations set forth in the amended complaint for which the

---

[8] "To trigger the presumption under Law 100 that the employer engaged in discriminatory conduct, the employer must show: (1) that she suffered an adverse employment action; (2) that there was no just cause for the adverse employment action; and (3) some basic fact substantiating the type of discrimination alleged." <u>Hernández v. Westernbank Puerto Rico Inc.</u>, Civ. No. 10-1573 (JAG), 2011 WL 3651819, at *5 (D.P.R. 2011) (citing <u>Colón-Muriel v. ASC</u>, 499 F.Supp.2d 98 (D.P.R. 2007)).

12

plaintiff seeks damages are covered by special labor legislation. Thus, plaintiff's Article 1802 claim is dismissed with prejudice.

### D. Law 80

"Puerto Rico Law 80 provides the exclusive remedy under Puerto Rico law for an employee who is discharged without demonstrating just cause." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 58 (1st Cir. 2000) (citing P.R. Laws Ann. tit. 29 §§ 185a-185m). Law 80 defines a "discharge" as, "in addition to the employee's layoff, his suspension indefinitely or for a term over three (3) months . . . ." P.R. Laws Ann. tit. 29, § 185e. The employee first must prove "that he was directly or constructively discharged," which then "shifts the burden of proof to the employer to show that the discharge was justified." Álvarez-Fonseca, 152 F.3d at 28 (citing P.R. Laws Ann. tit., § 185k). "Assuming that the employer provides evidence of 'just cause,'" Law 80 contains an additional requirement "that employers 'retain employees with greater seniority when layoffs become necessary for business of economic reasons.'" Arroyo-Pérez v. Demir Group Int'l, 762 F.Supp.2d 374, 382 (D.P.R. 2011) (citing Rodríguez v. E. Air Lines, Inc., 816 F.2d 24, 26 (1st Cir. 1987)). Such seniority is evaluated "within an employee's 'occupational classification.'" Id. (citing P.R. Laws Ann. tit. 29, § 185c).

Defendant makes two arguments that the court should grant summary judgment with regard to plaintiff's Law 80 claim: (1) that plaintiff was never discharged for purposes of Law 80; and, (2) in the alternative, that defendant had just cause to discharge him based on the "three consecutive equipment ruptures in a matter of days." ECF No. 21-2, at 13-17. There are genuine issues of fact, however, with regard to each of these contentions. Defendant propounds that Emilio Venegas and plaintiff agreed that Emilio Venegas would contact plaintiff once "the CAT

235 was repaired and his duties as an operator of this equipment were needed," suggesting that this demonstrates he was not discharged per the definition under Law 80. Id. at 16. While plaintiff concedes that Emilio Venegas told him to "take two weeks" while the CAT 235 was being repaired, defendant has not cited to evidence with a specific citation to the summary judgment record evincing that it in fact called plaintiff back to work after 2 weeks or at any time in the 3 month period following September 19, 2012. The record does reflect that Emilio Venegas sent plaintiff a letter requesting that he report to work at the Rafael Hernández Colón Library project on March 25, 2013, which was more than 3 months after the date on which plaintiff's employment with defendant had ceased. Moreover, in a letter dated February 25, 2013—that is, over 5 months after September 19, 2012—Emilio Venegas explained that plaintiff experienced a "temporary suspension" from his employment, noting:

> [Plaintiff] comes by regularly around our office to know about the 'status' of possible works [sic], the possibility of needing his services as operator on the diggers. We have repeatedly notified him that as soon as we need his services, he will start work, with the only exception that he not be available for any reason attributed to him.
>
> Despite that the machine that he operates (CAT 235 Digger) is not yet in service, he may start work using another similar machine and if it is needed for any new work. [sic]
>
> From the moment in which [plaintiff] was temporarily suspended, the first opportunity arose at the Hernández Colón Library Project. Just as his communication states, we had notified him to report to work to assign him to the project in the center of the town of Ponce. However, unfortunately we were notified by the Executive Director of the Hernández Colón Foundation, that they still do not have the construction permit; therefore, the works where [plaintiff] can participate in [sic] have been delayed for several weeks.
>
> At the moment that [plaintiff] reports, he will enjoy all of the benefits that he had with our Company . . .

ECF No. 25-3, at 1. Viewing the record in the light more favorable to plaintiff, a reasonable jury could conclude that plaintiff was suspended for a term greater than 3 months and thus was discharged pursuant to Law 80. As to defendant's contention that it had just cause for any such discharge, while it may argue to the jury that plaintiff's purported negligence was the primary motivation for any adverse employment action taken against him, his negligence has not been established for summary judgment purposes, as previously discussed.[9]

## V.  CONCLUSION

Defendant's motion for summary judgment (ECF No. 21) is GRANTED IN PART AND DENIED IN PART. With regard to plaintiff's claims pursuant to the ADEA, Law 100, and Law 80, genuine issues of material fact remain, which preclude summary judgment in favor of defendant. Plaintiff's Article 1802 claim, however, is dismissed with prejudice, as it is based on the same allegations which underlie his Law 100 age discrimination claim.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April, 2015.

s/Marcos E. López
U.S. Magistrate Judge

---

[9] Unlike with regard to his ADEA and Law 100 causes of action, with respect to Law 80 plaintiff alleges in the complaint that defendant's "adverse employment action against [him] constitutes a discharge without just cause," thus opening the door for plaintiff to argue that even if defendant did not terminate him, but rather suspended his employment for a period over 3 months, he is entitled to relief under Law 80. ECF No. 1, ¶ 55.